MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022-4784
212-735-8600
Joseph T. Moldovan
Robert K. Dakis
David J. Kozlowski

-and-

THOMPSON HINE LLP
335 Madison Ave., 12th Fl.
New York, NY 10017
212-908-3921
Barry M. Kazan

Attorneys for Churchill Credit Holdings, LLC

-and-

MAGNOZZI & KYE, LLP
23 Green Street
Suite 302
Huntington, NY 11743
Matthew Kye

Attorneys for Equity Environmental Engineering, LLC
and Damo Construction Company, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                              :
                                                   :    Chapter 11
    74 GRAND ST. EQUITIES LLC         :
                                                   :    Case No. 17-13295 (SCC)
        Putative Debtor.              :
                                                   :
-------------------------------------------------------------x

**STATEMENT OF PETITIONING CREDITORS IN SUPPORT OF
INVOLUNTARY BANKRUPTCY PETITION AND ENTRY OF AN
ORDER FOR RELIEF UNDER CHAPTER 11 OF THE BANKRUPTCY
<u>CODE IN RESPECT OF 74 GRAND STREET EQUITIES LLC</u>**

#7482627 v12 \025606 \0010

1

Churchill Credit Holdings, LLC ("Churchill"), senior secured lender and creditor of 74 Grand St. Equities LLC ("74 Grand St. Equities" or the "Debtor"), Equity Environmental Engineering, LLC ("Equity Engineering"), and Damo Construction Company, Inc. ("Damo"; together with Churchill and Equity Engineering the "Petitioning Creditors"), by and through their undersigned counsel, hereby submit this statement (the "Statement") in support of the involuntary bankruptcy petition (the "Petition"), dated November 20, 2017 (the "Petition Date"), filed by the Petitioning Creditors, for entry of an order for relief against the Debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

1. Churchill is a senior lender of 74 Grand St. Equities. Under certain Loan Agreements (as defined herein), the Debtor is indebted to Churchill in the amount of at least $13,708,003.52, plus fees and expenses (the "Churchill Claim").[1] The Churchill Claim arises from loans to 74 Grand St. Equities dating back to March of 2016 to develop a condominium complex at the real property located at 74 Grand Street, New York, NY (the "Property"). In financing this construction project, Churchill made protective advances to the contractors and subcontractors hired by the Debtor. In August of 2017, the Debtor failed to make its scheduled payments, and the Loan (as defined herein) fell into default. The Loan matured on October 1, 2017, with a payoff date of November 1, 2017 (the "Payoff Date"). The Debtor failed to make the required payments on account of the Loan by the Payoff Date.

2. Equity Engineering is an environmental engineering company hired by 74 Grand St. Equities to provide services on the Property in relation to the construction project. Under the

---

[1] The Claim increases by an additional $8,344.82 in accrued per diem interest each day after the Payoff Date (as defined herein).

#7482627 v12 \025606 \0010

2

terms of a Professional Services Agreement and related invoices, the Debtor is indebted to Equity Engineering in the amount of at least $12,744.37.

3. Damo is a construction company which provided services on the Property in relation to the construction project. From services rendered, the Debtor is indebted to Damo in the amount of at least $40,800.00.

4. This is a single-asset real estate (SARE) case. Nineteen months after financing for construction on the Property was secured, the Property remains a vacant lot. The Debtor has no cash flow and no assets apart from the Property. There is growing debt and disputes over ownership and the proper constitution of equity of the Debtor. Given the myriad of interests from mechanics lienholders and the cries of equity, it is necessary and appropriate to come before the bankruptcy court to resolve the issues herein and proceed to a sale of the Debtor's sole asset and equitable distribution of the proceeds in accordance with the Bankruptcy Code.

5. Upon information and belief, the Property was originally owned by TJD 21, LLC, a company owned by Gayle Dunne and possibly Sean Dunne. Before, during, and after the loan process, the Debtor represented to Churchill that the Property was purchased and currently owned solely by 74 Grand St. Equities LLC, and that the Dunne family had no continuing interest in the Property, save being the owner's agent with respect to the construction. There has since arisen a dispute as to whether Gayle Dunne and Mountbrook USA, LLC ("Mountbrook") entered into a side deal with 74 Grand St. Equities and several other entities which may affect the ownership of the Property and which serves as an independent event of default under the Loan Agreements.

6.     The Loan Agreements were entered on March 3, 2006. On the same day, without Churchill's knowledge or consent, the Debtor and 74 Grand St. Holdings LLC ("<u>74 Grand St. Holdings</u>"), along with Greg Kavanagh and Paul McDonnell, apparently entered an agreement with Mountbrook and Gayle Dunne individually (the "<u>Mountbrook Agreement</u>") under which Mountbrook would act as project manager, owner's representative, and supervisor of the construction, and would be reimbursed for overhead directly attributable to the project provided it was agreed to in advance. The Mountbrook Agreement also provides after that after repaying lenders, unsecured creditors, and cash equity, any remaining cash will be distributed 50% to 74 Grand St. Equities, 74 Grand St. Holdings, Kavanagh, and McDonnell (collectively, the "<u>Purchasers</u>"), and 50% to Gayle Killilea Dunne or her assigns. It also notes the Purchasers are personally liable to Gayle Killilea Dunne for misapplication or misappropriation of monies due to her under the Mountbrook Agreement.

7.     On September 15, 2017, Gayle Dunne and Mountbrook, through their attorney, demanded compensation from the Purchasers purported to be due under the Mountbrook Agreement, and threatened to file a lien, lis pendens, and/or commence an action if the issue was not resolved. Subsequently, in a series of letters by and among the attorneys for the Purchasers, Gayle Dunne and Mountbrook, and Churchill, the parties have disputed whether or not the Mountbrook Agreement is valid, whether or not there exists an ownership dispute (which in and of itself is an ownership dispute), and what rights each of the parties may or may not have with respect to the Property and relative to each other.

8.     All the while, the Property sits vacant, the costs continue to mount, and the Debtor is insolvent, failing to make payments as such payments come due. To stop the noise,

stop the bleeding, and maximize proceeds, a sale needs to be conducted through chapter 11 under the Court's supervision.

9.  The Churchill Claim, together with the other claims asserted, far exceed any reasonable value of the Debtor's sole asset, the Property.

10. The Petitioning Creditors filed the Petition in order to utilize the bankruptcy process to enact a method of providing supervision of the Debtor's operations, and ensure prompt and proper disposition of the Debtor's sole asset through a section 363 sale.

11. The Petition has been filed by the requisite number of petitioning creditors under section 303(b)(1) of the Bankruptcy Code (namely, three or more), as there are more than twelve creditors holding claims that are not contingent or the subject of a *bona fide* dispute, and the Debtor is "generally not paying [their] debts as such debts become due" under section 303(h)(1) of the Bankruptcy Code. Accordingly, an order for relief should be entered against the Debtor under chapter 11 of the Bankruptcy Code.

## **CHURCHILL'S CLAIM**

12. Churchill Credit Holdings LLC is a real estate investment firm with an office at 250 Bowery, 2nd Floor, New York, New York 10012. Churchill also is the administrative agent for Square Grand Street SARL ("Square Grand Street") with respect to the Loan, to the benefit of Churchill and Square Grand Street as Lenders under the Loan Documents.

13. Churchill's Claim consists of a loan in the original amount of $17,500,000 (the "Loan") made by Churchill, as agent, to 74 Grand St. Equities, comprised of (i) a loan in the principal amount of $9,000,000 pursuant to that certain Acquisition Loan and Security Agreement, dated as of March 3, 2016 (as extended, renewed, supplemented, amended, or

#7482627 v12 \025606 \0010

5

modified from time to time, the "Acquisition Loan Agreement"; attached hereto as **Exhibit A**), (ii) a loan in the maximum principal amount of $6,000,000 pursuant to that certain Building Loan and Security Agreement, dated as of March 3, 2016 (as extended, renewed, supplemented, amended, or modified from time to time, the "Building Loan Agreement"; attached hereto as **Exhibit B**), and (iii) a loan in the maximum principal amount of $2,500,000 pursuant to that certain Project Loan and Security Agreement, dated as of March 3, 2016 (as extended, renewed, supplemented, amended, or modified from time to time, the "Project Lease Agreement"; attached hereto as **Exhibit C**; and together with the Acquisition Loan Agreement and the Building Loan Agreement, the "Loan Agreements").

14. The Loan fell into default (the "Default") when (i) the Debtor failed to make its regularly scheduled monthly payment on August 1, 2017, triggering an Event of Default under each of the Loan Agreements pursuant to sections 2.4(b) and 15.1.1(a)(B) thereof; (ii) the Debtor failed to pay the entire outstanding principal amount and all accrued and unpaid interest on the Loan by October 1, 2017 triggering an Event of Default under each of the Loan Agreements pursuant to sections 2.3.1 and 15.1.1(a)(A) thereof; and (iii) an Event of Default occurred under each of the Loan Agreements as a result of the Debtor's breach of sections 7.3.3 and 15.1.1(j) thereof, as a result of the Debtor's execution without Churchill's consent of the Mountbrook Agreement. Churchill provided a Notice of Default and Reservation of Rights to the Debtor on or about October 3, 2017 (the "Notice of Default"; attached hereto as **Exhibit D**).

15. As of the date hereof, the balance due under the Loan Agreements is $13,708,003.52, including accrued but unpaid interest. The fair market value of Churchill's

#7482627 v12 \025606 \0010

6

collateral is $12,600,000, which is well below the amount of its debt. A copy of the appraisal report is attached hereto as **Exhibit E**.

## EQUITY ENVIRONMENTAL'S CLAIM

16. Equity Environmental is an engineering firm maintaining an office address of 500 International Drive, Suite 150, Mount Olive, New Jersey. Equity Environmental was hired by 74 Grand Street Equities in or about June 2016 to provide environmental oversight of the construction of a building to be located at 74 Grand Street, New York, New York.

17. In connection with its services rendered, Equity Environmental provided monthly invoices to Grand Street Equities describing the services provided and costs and expenses associated with same.

18. From April 12, 2017 through and including September 13, 2017, Equity Environmental sent monthly invoices to Grand Street Equities. Grand Street Equities accepted these invoices without protest. Nevertheless, Grand Street Equities has failed to make payment of these invoices and there remains due and owing the sum of $12,366.37. A copy of the invoices and an account Statement is annexed as **Exhibit F**.

## DAMO'S CLAIM

19. Damo is a construction company maintaining an office address of 14618 Liberty Ave, Jamaica, New York. Damo was retained as a subcontractor to provide both consulting services and the labor necessary to facilitate certain concrete work required at the Property.

20. In connection with its services rendered, Damo provided invoices to Palm Construction, the general contractor of the project, describing the services rendered and costs and expenses associated with same.

#7482627 v12 \025606 \0010

7

21. Although the work invoiced was performed, Palm Construction has not paid such invoices and has indicated that the project owner Grand Street Equities has failed to remit payment for the invoices.

22. Damo has not received any communications from Grand Street Equities or Palm Construction, questioning the quality of its workmanship, the services provided, or the amounts due and owing.

23. As of November 5, 2017 there remains due and owing the sum of $40,800.00.

## THE DEBTOR CONDUCTS NO BUSINESS

24. 74 Grand St. Equities LLC is a Delaware limited liability company, and is qualified to do business in New York.

25. The Debtor conducts no business and exists solely to obtain financing for and coordinate construction on the Property. That construction is not completed, and the Property is non-operational.

26. The Debtor is generally not paying its debts as they come due. The Debtor financed the construction through the Loan, and thereby has benefitted itself to the detriment of Churchill and, as of the Default at which point Churchill stopped funding the construction, the various contractors and subcontractors who, upon information and belief, have not been paid by the Debtor in the absence of Churchill's advance funding.

## THE DEBTORS' CREDITORS

27. As mentioned above, the Debtor's creditors include Churchill, Equity Environmental, Damo, and various other contractors and subcontractors working on the construction. The Petitioning Creditors have valid, liquidated, non-contingent claims against the

#7482627 v12 \025606 \0010

Debtor. Additionally, it is believed there are more than twelve creditors holding noncontingent claims that are not the subject of a bona fide dispute. Accordingly, the Petition was properly commenced by the Petitioning Creditors.

28.   The Debtor is not believed to have any trade creditors, as there are no business activities occurring at the premises.

## JUDICIAL OVERSIGHT IS NECESSARY

29.   As mentioned herein, the Debtors is a company without operations save to obtain financing and oversee the construction on the Property. That construction has barely begun and the Property sits as a vacant lot despite the passing of nineteen months. Moreover, the Debtor may have been dealing with members of the Dunne family and/or Mountbrook in a way that could further diminish the value of the Debtor's sole asset, and harm all the Debtor's creditors. This, combined with the unclear equity makeup of the Debtor, disputed ownership of the Property, and various claims and allegations being asserted by creditors, lienholders, equity, and other parties in interest begs for judicial intervention.

30.   The Petition has been appropriately commenced by the Petitioning Creditors, and the Debtor is generally not paying its debts as they come due. Value has been extracted from Churchill and other creditors for over a year. Resolution of the issues surrounding the Property and the final sale of the Property via section 363 of the Bankruptcy Code is warranted and appropriate. Accordingly, Churchill submits that an order for relief should promptly be entered.

## CONCLUSION

31.   The Debtors has defaulted on its payment obligations while continuing to benefit from the fruits of Churchill's funding. All statutory requirements for the filing of an involuntary

#7482627 v12 \025606 \0010

9

petition under section 303 of the Bankruptcy Code have been satisfied. An independent fiduciary is desperately needed. Accordingly, Churchill requests that the Petition be granted and an order for relief be entered.

Dated: New York, New York
November 20, 2017

Respectfully Submitted,
MORRISON COHEN LLP

By:  */s/ Robert K. Dakis*
Joseph T. Moldovan
Robert K. Dakis
David J. Kozlowski
909 Third Avenue
New York, NY 10022-4784
212-735-8600

-and-

Barry M. Kazan
Thompson Hine LLP
335 Madison Ave., 12th Fl
New York, NY 10017
212-908-3921

Attorneys for Churchill Real Estate Holdings, LLC

-and-

Matthew Kye
Magnozzi & Kye, LLP
23 Green Street
Suite 302
Huntington, NY 11743

Attorneys for Equity Environmental Engineering, LLC and Damo Construction Company, Inc.

#7482627 v12 \025606 \0010